**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **FMP STRATFORD LLC,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 08 CV 4073 |
| | ) | |
| v. | ) | Judge Conlon |
| | ) | |
| **CENTURY THEATRES, INC.,** | ) | Magistrate Judge Valdez |
| | ) | |
| Defendant. | ) | |

## CENTURY'S MEMORANDUM IN SUPPORT OF ITS MOTION TO STAY CASE PENDING ARBITRATION

### I.   INTRODUCTION

Under the parties' December 12, 2005 lease (the "Lease," appended to FMP's amended complaint), FMP was required to reimburse Century for the cost of certain work that Century performed ("Tenant's Work") in opening a 16-screen movie theater complex on the second floor of FMP's Stratford Square Mall in Bloomingdale. FMP was also required to make certain common area and site improvements to the mall ("Landlord's Work"). Century contends that FMP has done neither. As a result, Century contends that (a) it is entitled, pursuant to the Lease terms, to offset the rent FMP is suing Century for here against FMP's unfulfilled reimbursement obligations and (b) FMP's breach of the Lease for failing to make the required site improvements entitles Century, among other things, to terminate the Lease.

Century and FMP have been parties to an arbitration proceeding before the AAA over those very issues since February of this year. Then, on July 17, 2008, FMP commenced this lawsuit. The arbitration provisions in the Lease, however, essentially require the parties to arbitrate all disputes as to the alleged existence of any default under the Lease. The sole

exception to the parties' rights to have all such disputes arbitrated is when the alleged default consists *solely of the failure to pay rent*. The pending arbitration proceedings are not *solely* about Century's failure to pay rent. Indeed, they are not really about Century's failure to pay rent at all. They are about, among other things, FMP's failure to reimburse Century for amounts due under the Lease and, consequently, Century's rightful withholding of rent in the proper exercise of its contractual setoff rights based on FMP's breaches of the Lease. Thus, any amount of rent that might happen to be due and owing to FMP after the arbitrators resolve the reimbursement and offset issues would necessarily be the product of the arbitration award.

Therefore, for several reasons, the Court should stay FMP's lawsuit. First, a stay is appropriate because FMP's rent claim is directly subject to arbitration under Section 18.5(a) of the Lease. Second, even if FMP's rent claim is deemed non-arbitrable, this Court should exercise its discretion to stay FMP's rent claim pending resolution of the arbitration because (a) that rent claim will be decided, as mentioned above, as a direct result of the determination of the unequivocally arbitrable issues of FMP's reimbursement obligations and Century's offset rights and (b) the Court can't decide FMP's rent claim until arbitration determines those indisputably arbitrable issues.

## II.    **FACTS**

The facts underlying the parties' relationship and their disputes arising under the Lease, not all of which are necessary for the Court's determination of Century's stay motion, are nevertheless fully set forth in Century's Amended Statement of Claims in the pending arbitration proceedings, which is attached hereto as Exhibit 1 (without the exhibits thereto).

Section 18.5 of the Lease provides for arbitration of certain disputes between the parties. A copy of Section 18.5 of the Lease is attached hereto as Exhibit 2. After both parties served

2

one another with notices of default under the Lease, Century commenced its arbitration before the AAA on February 27, 2008. FMP did likewise on March 7, 2008, as evidenced by letters of that date sent to the AAA and Century and submitting therewith a Statement of Claim. Those FMP letters and Statement of Claim are attached hereto as Exhibit 3.[1]

As is evidenced in FMP's Statement of Claim, FMP does not dispute the arbitrability of whether FMP breached the Lease by "(a) failing to pay the full amount of Landlord's Reimbursement, (b) failing to undertake and complete Landlord's Work, including the installation and renovation of interior common areas and the renovation of the priority parking area, and (c) failing to undertake and complete the Mall Entry improvements".[2] (Exhibit 3, ¶ 6)

In its initial demand for arbitration, a copy of which is attached hereto (without exhibits) as Exhibit 5, Century indicated on the AAA form demand that it sought to arbitrate the issues that "(1) Respondent/Landlord has failed to pay Claimant/Tenant the Landlord's Reimbursement due to Tenant under the parties' Lease and (2) Respondent has failed to complete site improvements provided for under the parties' Lease". In its February 27, 2008 letter to FMP transmitting a copy of its initial demand, Century stated that its demand for arbitration was being made in response to FMP's rent default notice. Copies of both Century's February 27, 2008 letter and FMP's rent default notice are attached as Exhibits 6 and 7, respectively.

In its Amended Statement of Claim, Century clarifies that the "Landlord's Reimbursement" issue necessarily also involves the adjudication in arbitration of whether

---

[1] Omitted from Exhibit 3 are the exhibits to FMP's Statement of Claim, which included the Lease, Century's February 27, 2008 letter commencing its arbitration and Century's AAA-form Demand for Arbitration.

[2] The capitalized terms in FMP's Statement of Claim track those terms in Century's January 17, 2008 notice of default to FMP, which is attached hereto as Exhibit 4.

Century rightfully withheld $837,473.51 in rent through February 27, 2008 in accordance with Century's recoupment/setoff rights under Section 5.2(c) of the Work Letter (Lease Exhibit D). (Exhibit 1, ¶¶ 10-11). Although FMP has not yet responded to Century's Amended Statement of Claim, FMP cannot deny the arbitrability of the issue of Century's offset/recoupment rights under the Lease, given that Section 18.5(b) provides in relevant part:

> (b)    **Disputed Reimbursement**. If either party disputes any demand for reimbursement, refund or offset by the other party, then the disputing party may . . . serve a notice on the non-disputing Party that it is submitting the matter to binding arbitration, as set forth below . . . .

Thus, the sole dispute between the parties that FMP, by the filing of the instant lawsuit, apparently deems non-arbitrable, is its claim for the rent that Century withheld on recoupment grounds, pursuant to Section 5.2(c) of the Work Letter, prior to Century's commencement of the arbitration.[3] As argued below, Century contends that that rent claim is either subject to binding arbitration itself, or should be stayed pending the resolution of the issues the parties are presently arbitrating.

## II.    ARGUMENT

### A.    FMP's Claim for Unpaid Rent is Subject to the Lease's Arbitration Provisions

Century believes that the Illinois enactment of the Uniform Arbitration Act, 710 ILCS 5/1 *et seq.* ("UAA"), rather than the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, applies to the Court's adjudication of this motion because the parties agreed to the applicability of Illinois law in the Lease. *E.g., Glazer's Distributors of Illinois, Inc. v. NWS-Illinois, Inc.,* 876 N.E.2d

---

[3]    Pursuant to the provisions of Section 18.5 of the Lease, Century's submission of the parties' dispute over Century's entitlement to the payment of the balance of its reimbursement requests stayed Century's right to withhold rent pursuant to Section 5.2(c) of the Work Letter. Accordingly, after February 27, 2008, Century ceased to withhold rent and has paid the Base Rent and other charges due under the Lease to FMP.

203, 211 (1st Dist. 2007) (even when parties' contract involves interstate commerce, the application of state arbitration law is not preempted by the FAA where the parties have agreed that the contract at issue, including the arbitration provision, would be governed by state law) (noting this result as being dictated by the U.S. Supreme Court in *Volt Information Sciences, Inc. v. Bd. Of Tr. Of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475-76, 109 S.Ct. 1248 (1989)). Section 18.5(d) of the Lease provides that "the arbitrator(s) shall apply the substantive law of the state in which the Premises are located." The Lease also contains a general choice of law provision (Lease, Section 21.26, p. 78) providing that Illinois shall apply to its governance and construction.

Under Illinois law, the UAA embodies a legislative policy favoring enforcement of agreements to arbitrate future disputes. *E.g., Royal Indemnity Co. v. Chicago Hospital Risk Pooling Program*, 865 N.E.2d 317, 323 (1st Dist. 2007). Moreover, arbitrability "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. *Amgen, Inc. v. Ortho Pharmaceutical Corp.*, 708 N.E.2d 385, 390 (1st Dist. 1999) (and doubts as to the scope of coverage should be resolved in favor of coverage) (internal quotations omitted, citing *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650, 106 S.Ct. 1415 (1986)). Because public policy favors arbitration, arbitration clauses should be construed liberally. *Liberty Chevrolet, Inc. v. Rainey*, 791 N.E.2d 625, 629 (2d Dist. 2003).[4]

---

[4]    The application of the FAA and federal law would not change the outcome reached by applying Illinois law. *E.g. Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226, 107 S.Ct. 2332 (1987) (FAA established strong federal policy favoring arbitration and requiring that courts rigorously enforce agreements to arbitrate); *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639, 641 (7th Cir. 1993) ("It is beyond peradventure that the [FAA] embodies a strong federal policy in favor

*(footnote continued to next page)*

Finally, "the proper course of action when a party seeks to invoke an arbitration clause is to stay the proceedings rather than to dismiss outright." *Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 561 (7th Cir. 2008) (internal quotation omitted).

Here, Century presumes that FMP filed this lawsuit in reliance on the carve-out in Section 18.5(a) of the Lease, which provides: "Tenant's rights under this Section 18.5(a) shall not apply to a default or Event of Default consisting solely of the failure to pay Base Rent or Additional Rent." As stated earlier, however, the alleged defaults or Events of Default before the arbitrators do not consist solely of the "failure to pay Base Rent or Additional Rent." In fact, the "defaults" that Century has submitted to binding arbitration only tangentially involve any failure to pay rent.

What Century does claim in the arbitration is that FMP is in breach of the Lease for its failure to reimburse Century for the full cost of Tenant's Work. (Century's Amended Statement of Claims, Exhibit 1, p. 3-6, Century's "First Claim" in arbitration). In connection therewith, Century seeks (i) a declaration that Century's withholding of rent through February 27 was rightful under the Lease; (ii) an award of $895,573 plus interest representing the balance of FMP's Reimbursement still remaining due to Century; and, (iii) awards of attorneys' fees and costs of arbitration pursuant to the Lease. (*See* id., pp. 5-6). Exactly how can that claim be

---

*(footnote continued from previous page)*
of arbitration."); *Livingston v. Associates Finance, Inc.*, 339 F.3d 553, 556 (7th Cir. 2003 ("The purpose of the FAA is to reverse the longstanding judicial hostility to arbitration agreements . . . and to place them on the same footing as other contracts.") (internal quotation omitted); *Volt*, 489 U.S. at 468 (in interpreting an arbitration agreement, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration."); *AT&T Technologies*, 475 U.S. at 650 (so strong is policy favoring arbitration that enforcement of an arbitration agreement "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.").

6

interpreted as one for rent, let alone "solely" for rent?

Century also claims FMP is in breach of the Lease for its failure to make the site and common area improvements required under the Lease. (*Id.*, p. 6-7, Century's "Second Claim" in arbitration). In connection therewith, Century seeks (i) a declaration that FMP has failed to make the improvements required under the Lease; (ii) a declaration that Century is accordingly entitled to terminate the Lease; and (iii) awards of attorneys' fees and costs of arbitration pursuant to the Lease. (*See id.*). Exactly how can that claim be interpreted as one for rent, let alone "solely" for rent?

It seems obvious to Century that a carve-out of this nature to the parties' contractual duty to arbitrate their lease disputes is intended to protect a landlord like FMP from being tied up in arbitration by a financially distressed tenant who can't pay its debts, like rent, when due. It was not intended to apply to a situation such as the present one, where the parties are arbitrating the landlord's alleged defaults under the Lease, and where the tenant's alleged failure to pay rent is the result of the exercise of its contractual offset rights. For that reason, and because, as argued above, the arbitrable issues under Section 18.5 of the Lease—and, indeed, those already submitted to binding arbitration—encompass alleged defaults *other* than—or certainly *more* than--any failure to pay rent, the Court should conclude that FMP's rent claim is subject to binding arbitration under the Lease. Therefore, the Court should grant this motion.

**B.    Even if FMP's Rent Claim is Non-Arbitrable, the Court Should Nevertheless Stay that Claim**

This Court has discretion to stay the litigation of non-arbitrable claims or issues to control its own docket. *Volkswagen of America, Inc. v. Sud's Of Peoria, Inc.*, 474 F.3d 966, 971 (7th Cir. 2007). It doesn't, however, have discretion to decide arbitrable issues. *Id.* (for arbitrable

issues, a stay pending arbitration is mandatory).  One factor that bears on whether a court abuses its discretion in permitting the litigation of non-arbitrable issues to proceed in the face of arbitrable issues being arbitrated is the risk of inconsistent rulings because the pending arbitration is likely to resolve issues material to the lawsuit.  *Id.* at 972 (internal quotations omitted).  Other factors include the extent to which parties will be bound by the arbitrators' decision and the prejudice that may result from delay.  *Id.*

It seems to Century that the instant situation presents the Court with an easy decision on the stay issue, even if FMP's rent claim is non-arbitrable.  Because Century's offset rights and whether FMP breached the Lease by failing to make required site improvements are indisputably arbitrable, this Court cannot adjudicate them.  Therefore, Century cannot assert those matters as affirmative defenses or counterclaims to FMP's rent claims.  Any decision by this Court, therefore, on FMP's rent claim would subject Century to maximally inconsistent and unfair rulings by this Court and the arbitrators.  Furthermore, and as mentioned heretofore, the arbitrators necessarily must adjudicate FMP's rent claim in resolving Century's claims that are currently before the arbitrators.  They simply cannot quantify Century's setoff rights without determining whether there is any unpaid rent due to FMP at the same time.  *See Volkswagen*, 474 F.3d at 972 (". . . district courts actually may prefer to stay the balance of the case in the hopes that the arbitration might help resolve, or at least shed some light on, the issues remaining in federal court.").

## III.    CONCLUSION

FMP's rent claim is subject to the parties' contractual arbitration provision, even without any presumption of arbitrability that requires the Court to resolve any doubts in favor of arbitrability.  If, on the other hand, FMP's rent claim is deemed to be non-arbitrable, then the

Court should stay that claim pending the resolution of the arbitrable issues, which will resolve FMP's rent claim, as well.

Dated: August 15, 2008

**CENTURY THEATRES, INC.**

By: _____ /s/ Janice L. Duban _____
One of its attorneys

Gerald B. Lurie
Janice L. Duban
DLA PIPER US LLP
203 North La Salle Street
Suite 1900
Chicago, Illinois 60601-1293
(312) 368-4000

9

# EXHIBIT 1

## IN THE AMERICAN ARBITRATION ASSOCIATION

CENTURY THEATRES, INC.         :

            Claimant,        :

         v.                   :    No. 51 115 Y 00285 08

FMP STRATFORD LLC         :

            Respondent.     :

## CENTURY THEATRES, INC.'S AMENDED STATEMENT OF CLAIMS

### Background

1.     Claimant, Century Theatres, Inc. ("Century") is the Tenant, and Respondent FMP Stratford LLC ("FMP") is the Landlord under a Lease dated December 12, 2005 (the "Lease"). The Lease demises to Century approximately 50,000 - 60,000 square feet of space (the "Premises") on the upper level of the Stratford Square Mall (the "Center"), a retail shopping mall situated in Bloomingdale, Illinois. The Center site plan is depicted in Exhibit A to the Lease. The Premises are denoted by the cross-hatching on the Center site plan. A copy of the Center site plan is appended hereto as Exhibit 1.

2.     At the time the Lease was executed, the Premises were not ready for Century's occupancy. Rather, the Lease provided for the demolition of then-existing tenant spaces in the area of the Premises, and the build-out of the Premises for Century's use as a motion picture theater complex. Sections 1.1 and 1.2 of the Work Letter attached to the Lease as Exhibit D (the "Work Letter") specify the work required to prepare the Premises for Century's occupancy and use, and allocate responsibility for the performance of that work between FMP ("Landlord's Work") and Century ("Tenant's Work"). A copy of the Work Letter is appended hereto as Exhibit 2.

3.    Pursuant to the provisions of Section 5.2 of the Work Letter and Section 1.1 of the Lease, FMP is obligated to reimburse Century for the design, funding and installation of Tenant's Work, up to a maximum of $5,000,000 ("Landlord's Reimbursement").

4.    Pursuant to the provisions of Section 1.1 of the Work Letter, FMP is obligated, as part of Landlord's Work, to construct certain Site Improvements and Common Area Improvements, including the Signage described in Sections 15.1 and 15.7 of the Lease. A copy of Sections 15.1 and 15.7 of the Lease is attached hereto as Exhibit 3. At the time Century entered into negotiations with FMP, the Center was in outdated condition, and FMP's promise to perform this work was an inducement without which Century would not have entered into the Lease.

5.    FMP's payment of Landlord's Reimbursement to Century in full, and FMP's completion of the construction of the Site Improvements and Common Area Improvements are, pursuant to the definition set forth in Section 1.2 of the Lease and Exhibit C to the Lease, "Commencement Date Conditions" -- conditions precedent to Century's obligation to open for business at the Premises. An excerpt from Section 1.2 of the Lease setting forth the definition of Commencement Date Conditions, and a copy of Exhibit C, are attached hereto as Exhibit 4. However, pursuant to the provisions of Section 3.1(a) of the Lease, Century may elect, in its sole discretion, to open for business at the Premises prior to the satisfaction of the Commencement Date Conditions, without its doing so constituting a waiver of any of the Commencement Date Conditions. A copy of Section 3.1(a) of the Lease is attached hereto as Exhibit 5.

6.    As of June 29, 2007, Century had completed Tenant's Work. However, no part of Landlord's Reimbursement had been paid to Century, and FMP had failed to undertake, let alone complete, the construction of the Site Improvements and Common Area Improvements.

Notwithstanding that these Commencement Date Conditions had not occurred, Century elected, pursuant to its right under Section 3.1(a) of the Lease, to open for business at the Premises on June 29, 2007.

7.      Pursuant to the provisions of Paragraph 3(a) of the Lease, upon Century's election to open for business at the Premises prior to the satisfaction of the Commencement Date Conditions, FMP was obligated to use its best efforts to satisfy all of the Commencement Date Conditions as soon as possible after Century's opening for business.  Notwithstanding this obligation, as detailed in Century's first and second claims, FMP has failed and refused to pay Century the full amount due from FMP as Landlord's Reimbursement, and has failed and refused to commence and complete the Site Improvements and Common Area Improvements.  The Center remains, substantially, in the same outdated condition it was in at the date of Lease execution.

## First Claim

### FMP's Failure to Reimburse Century for the Cost of Tenant's Work

8.      Section 5.2 of the Work Letter sets out the manner in which Landlord's Reimbursement is to be paid by FMP to Century.  Pursuant to these provisions, Century submitted four requests for reimbursement to FMP, totaling $4,579,423.00.  Of this amount, FMP has paid $2,846,367, leaving a balance due of $1,733,056. The last payment made by FMP was in August 2007.

9.      FMP has advised Century that its refusal to pay the balance of the $1,733,056 is based, in part, on FMP's position that the cost of digital projection equipment which Century purchased and installed in the Premises as part of Tenant's Work, and related license fees for that digital equipment, are not eligible, under the applicable provisions of the Lease and Work Letter,

for reimbursement as part of Landlord's Reimbursement. Century disputes this position. Furthermore, FMP knew of Century's intention to install digital projection equipment as part of Tenant's Work, and encouraged and approved Century's doing so. Of the $1,733,056 which FMP has failed to pay, approximately $950,000 is attributable to the cost of the digital projection equipment and related fees. FMP has approved an additional $292,182 of Century's unpaid requests, but has failed to pay that amount, based upon claimed offsets unrelated to Tenant's Work, which offsets Century disputes. FMP first asserted these offsets well after Century opened for business at the Premises, and after FMP had approved the expenditures which are the subject of the offsets. FMP has not given Century any explanation for FMP's disapproval of the other portion of Century's reimbursement requests--approximately $491,000. FMP's disapproval of Century's remaining reimbursement requests, and its belated offset claims, are in actuality the product of FMP's deteriorating financial condition and resultant management changes.

10. Pursuant to Section 5.2(c) of the Work Letter, FMP's failure to pay Century all or any portion of the Landlord's Reimbursement when due entitles Century to withhold payment of Base Rent and other charges due under the Lease until Century has recouped the unpaid amount of the Landlord's Reimbursement in full, together, with interest thereon at the Default Rate specified in the Lease.

11. As of February 15, 2008, pursuant to its recoupment rights under Section 5.2(c) of the Work Letter, Century had withheld $837,473.51 in Base Rent and other charges due FMP under the Lease and applied the withheld amount to the $1,733,056 of Landlord's Reimbursement remaining due Century. On or about February 16, 2008, FMP served Century with a Notice of Default alleging, *inter alia*, that Century was in default for failing to pay FMP

- 4 -

the rent which Century had withheld pursuant to its rights under Section 5.2(c) of the Work Letter and threatening Century with legal action if this amount was not paid to FMP within seven days following Century's receipt of the Notice of Default. A copy of FMP's notice of default dated February 15, 2008 is attached hereto as Exhibit 6.

12.    Section 18.5 of the Lease provides for arbitration of certain disputes between Landlord and Tenant. A copy of Section 18.5 of the Lease is attached hereto as Exhibit 7. Because Century was entitled to withhold the rent claimed by Century in its Notice of Default, and to apply the withheld rent to the unpaid amount of Landlord's Reimbursement, Century disputes that it is in default under the Lease for failure to pay rent, and, pursuant to the provisions of Section 18.5 of the Lease, filed its Demand for Arbitration on February 28, 2008. On February 27, 2008, counsel for FMP delivered a copy of FMP's Demand in Arbitration to counsel for FMP, advising FMP that Century's Demand for Arbitration was filed in response to the February 15, 2008 Notice of Default delivered to Century. A copy of the February 27, 2008 letter, with the enclosures thereto, is attached hereto as Exhibit 8.

13.    Pursuant to the provisions of Section 18.5 of the Lease, Century's submission of the parties' dispute over Century's entitlement to the payment of the balance of its reimbursement requests stayed Century's right to withhold rent pursuant to Section 5.2(c) of the Work Letter. Accordingly, after February 27, 2008, Century ceased to withhold rent and has paid the Base Rent and other charges due under the Lease to FMP.

Century requests the following relief on its first claim:

A.    A declaration that Century's withholding of the $837,473.51 in rent due through February 27, 2008 was rightful under the Lease and Work Letter;

B.    An award of $895,573 plus interest thereon, representing the balance of Landlord's Reimbursement due Century;

- 5 -

C.    An award of attorneys' fees, pursuant to the provisions of Section 21.17 of the Lease; and

D.    An award of the costs of arbitration, pursuant to the provisions of Section 18.4 of the Lease.

**Second Claim**

**FMP's Failure to Complete Site Improvements and Common Area Improvements**

14.    FMP has failed to construct the following components of the Site Improvements and Common Area Improvements described in Section 1.1b. of the Work Letter:

(a)    The work described in Section 1.1b.i. of the Work Letter as more particularly depicted or described on Exhibit D-4 to the Lease. A copy of Exhibit D-4 is attached hereto as Exhibit 9.

(b)    The installation of the signage described in Section 1.1b.iii of the Work Letter.

(c)    The work described in Section 1.1b.iv of the Work Letter, as depicted in Exhibit D-5 to the Lease. A copy of Exhibit D-5 is attached hereto as Exhibit 10.

15.    Section 3.1(b) of the Lease entitles Century to elect to terminate the Lease if the Commencement Date Conditions (set out in Exhibit C to the Lease) are not met within 180 days after the expiration of Tenant's Work Period, whether or not Century has elected to open and operate at the Premises. A copy of Section 3.1(b) of the Lease is attached hereto as Exhibit 11. That 180-day period has passed, and two of the Commencement Date Conditions -- the substantial completion of Landlord's Work, which includes the Site Improvements and Common

Area Improvements, and the full payment of Landlord's Reimbursement to Century -- have not been satisfied.

16.　　Pursuant to the provisions of Section 18.5(a) of the Lease, Century's submission of its second claim to arbitration stays its right to serve a notice of its intent to terminate the Lease.

Century requests the following relief on its second claim:

A.　　A declaration that FMP has failed to complete the Site Improvements and Common Area Improvements described in Century's second claim, and that Century is entitled to terminate the Lease, subject to FMP's cure rights, as provided for in Section 3.1(b) of the Lease.

B.　　An award of attorneys' fees, pursuant to the provisions of Section 21.17 of the Lease; and

C.　　An award of the costs of arbitration, pursuant to the provisions of Section 18.4 of the Lease.

Date: August 8, 2008

CENTURY THEATRES, INC.

By: _____
　　　Gerald B. Lurie, Its Attorney

Gerald B. Lurie
**DLA Piper US LLP**
203 North LaSalle Street
Suite 1900
Chicago, Illinois 60601
(312) 368-4092
gerald.lurie@dlapiper.com

# EXHIBIT 2

**Section 18.5.    Arbitration Of Certain Disputes.**

    (a)    **Disputed Defaults.**  If either Landlord or Tenant disputes the existence of an alleged default or whether Landlord or Tenant is obligated to cure an alleged default under this Lease after being served with a notice of default, then the Party who is alleged to have committed the default shall have such grace period as is provided in this Lease (or, if no such grace period is provided herein, ten (10) business days after receipt of such notice) in which to submit the matter to binding arbitration as set forth below, in which event Landlord's remedies under <u>Section 18.2</u>, as well as any other right of Landlord at law to recover possession of the Premises or to terminate the Lease, and Tenant's remedies hereunder to terminate this Lease or to abate Rent or to offset amounts allegedly owed by Landlord to Tenant shall be stayed pending the arbitration. In the event that the arbitration results in a finding that either Landlord or Tenant is in default or is required to cure the alleged default, the defaulting Party shall have such grace period as is provided in this Lease to cure such default, commencing from the date the defaulting Party receives a copy of the award of the arbitrator(s). In addition, if Landlord or Tenant disputes whether an Event of Default exists which entitles the other Party to expend amounts and to cure the Event of Default, as more particularly described in <u>Section 18.2</u> and <u>Section 18.6</u>, and the disputing Party notifies the other Party within two (2) business days of receipt of notice from the other Party that such Party intends to exercise its rights to self-help in curing the Event of Default, then the exercise of the self-help rights shall be stayed pending the arbitration and if the arbitrators determine that an Event of Default exists, then immediately following such determination, the Party claiming the Event of Default may exercise the self-help rights. Tenant's rights under this <u>Section 18.5(a)</u> shall not apply to a default or Event of Default consisting solely of the failure to pay Base Rent or Additional Rent. Tenant's rights under this <u>Section 18.5(a)</u> shall not impair or otherwise affect any rights or remedies of Landlord other than the rights to terminate this Lease or to re-enter the Premises or exercise self-help rights. Landlord's rights under this <u>Section 18.5(a)</u> shall not impair or otherwise affect any rights or remedies of Tenant other than the rights to terminate this Lease or to abate rent or to offset amounts allegedly owed by Landlord to Tenant or to exercise self-help rights in connection with an Event of Default.

    (b)    **Disputed Reimbursement.**  If either Party disputes any demand for reimbursement, refund or offset by the other Party, then the disputing Party may, within thirty (30) days after the receipt of the non-disputing Party's demand for payment or offset serve a notice on the non-disputing Party that it is submitting the matter to binding arbitration, as set forth below; provided, however that this <u>Section 18.5(b)</u> shall not excuse either Party from its obligations to pay when due any demanded amount that is not being disputed in good faith. If a Party disputes only a portion of a claim for reimbursement, refund or offset, the disputing Party shall pay the undisputed amounts without regard to the pendency of arbitration.

    (c)    **Other Disputes.**  In the event of any dispute between Landlord and Tenant over the amount of any equitable abatement of rent, or in the event of any other disputed matter that is expressly subject to arbitration under this Lease, such dispute shall be resolved by arbitration in accordance with the provisions of this <u>Section 18.5</u>.

    (d)    **Arbitrators; Award.**  Any disagreement or controversy described in this Section or elsewhere in this Lease where dispute resolution by arbitration is expressly provided or reference is made to this Section, shall be settled by binding arbitration to be held, and the award made pursuant to the then-applicable Commercial Arbitration Rules of the American Arbitration Association. In any such arbitration, the arbitrator shall be: (i) any person selected by the Parties to the dispute, if they are able to so agree within 10 days after any Party requests the other to so agree, if not, (ii) a three-member arbitration



panel, which shall act by majority vote and which shall consist of one member selected by each Party to the dispute and one member selected by the two members so selected, who shall act as chairman of the arbitration panel. If the first two arbitrators are unable to agree on the selection of the third arbitrator within 20 days after their appointment, the third arbitrator shall be selected by the American Arbitration Association. If one Party requests the other to agree on a single arbitrator and the Parties have failed to agree on such a single arbitrator, and one of the Parties thereafter shall fail or refuse to appoint a person to the arbitration panel under clause (ii) above within 20 days after the original request for agreement on a single arbitrator was made, the arbitration panel shall consist solely of the single arbitrator selected by the other Party. The arbitrator(s) shall apply the substantive law of the state in which the Premises are located. Any costs of arbitration (including the fees of the arbitrators) shall be borne by the Party against whom the award is made, as determined by the arbitrators. Any award of the arbitrator(s) shall state the reasoning on which the award is based.

(e)   **Failure to Appear.**  If one of the Parties shall fail or refuse to appear or to present evidence at the arbitration hearing, the arbitrator(s) shall be authorized to accept the evidence presented by the Party in attendance at the hearing and enter an award based on the evidence presented.

(f)   **Reimbursement.**  Tenant may reimburse itself with respect to any matter described herein as follows: Landlord's failure to serve a demand for arbitration within the period described above shall be deemed a waiver of any objection to Tenant's demand, and Tenant, if not reimbursed by Landlord, may reimburse itself from, and Tenant shall be entitled to a corresponding credit against, succeeding Base Rent and other charges hereunder, with interest at the Interest Rate from the tenth (10th) business day after Tenant's initial demand. If Landlord timely demands arbitration as set forth in Section 18.5, Tenant shall not reimburse itself pending award of the arbitrator(s). If any amount awarded Tenant in the arbitration is not paid by Landlord within ten (10) business days from the date of award, with interest from the date of the award, Tenant may thereafter reimburse itself from, and Tenant shall be entitled to a corresponding credit against, succeeding Rent and other charges, with interest at the Interest Rate from the date of the award. If any amount awarded Landlord in the arbitration is not paid by Tenant within ten (10) business days from the date of the award, with interest, from the date of the award, Landlord may resort to the remedies set forth in this Lease without further notice, as if no grace period ever existed.

(g)   **Enforcement.**  Judgment upon the arbitrator's award may be had and enforced in any court of law or equity having jurisdiction over the Parties.

Century Stratford Square Lease.v21.12-5-05



# EXHIBIT 3



Stradley Ronon Stevens & Young, LLP
Great Valley Corporate Center
30 Valley Stream Parkway
Malvern, PA 19355-1481
Telephone (610) 640-5800
Fax (610) 640-1965
www.stradley.com

Keith R. Dutill
KDutill@stradley.com
610.640.5809

March 7, 2008

<u>Via Facsimile & U.S. Mail</u>

Ms. Molly Bargenquest
Vice President – Case Management Center
AMERICAN ARBITRATION ASSOCIATION
1750 Two Galleria Tower
13455 Noel Road
Dallas, TX  75240-6636

Re:   <u>FMP Stratford LLC v. Century Theatres, Inc.</u>

Dear Ms. Bargenquest:

I enclose the following:

1. Two copies of my letter on behalf of FMP Stratford LLC ("FMP") addressed to Century Theatres, Inc. advising of FMP's intention to arbitrate;

2. Two copies of the Statement of Claim, which attaches as an exhibit the Lease Agreement containing the arbitration provisions; and

3. A check in the amount of $8,000 representing the initial filing fee under the American Arbitration Association schedule.

Kindly confirm notice of such filing to the parties.

Thank you very much for your assistance.

Very truly yours,

Keith R. Dutill

KRD:dv
Enclosures

cc:   Century Theatres, Inc.  (Via Facsimile & U.S. Mail) (w/Enclosures)
      Gerald B. Lurie, Esquire (Via Facsimile & U.S. Mail) (w/Enclosures)

# STRADLEY RONON
**ATTORNEYS AT LAW**

Stradley Ronon Stevens & Young, LLP
Great Valley Corporate Center
30 Valley Stream Parkway
Malvern, PA 19355-1481
Telephone (610) 640-5800
Fax (610) 640-1965
www.stradley.com

Keith R. Dutill
KDutill@stradley.com
610.640.5809

March 7, 2008

**<u>Via Facsimile & U.S. Mail</u>**

Century Theatres, Inc.
Attention: Chief Executive Officer
150 Pelican Way
San Rafael, CA 94901

**<u>Via Facsimile & U.S. Mail</u>**

Century Theatres, Inc.
Attention: General Counsel
150 Pelican Way
San Rafael, CA 94901

Re:　　**<u>FMP Stratford LLC v. Century Theatres, Inc.</u>**

Gentlemen:

In accordance with Section 18.5 of the Lease Agreement between FMP Stratford LLC and Century Theatres, Inc., I write to advise you that FMP intends to arbitrate the issues set forth in the attached Statement of Claim, which we are filing simultaneously with the American Arbitration Association.

Very truly yours,

Keith R. Dutill

KRD:dv
Enclosure

cc:　　Gerald B. Lurie, Esquire (Via Facsimile & U.S. Mail) (w/Enclosures)

IN THE AMERICAN ARBITRATION ASSOCIATION

FMP STRATFORD LLC
152 Stratford Square Mall
Bloomingdale, IL  60108

               Claimant,

      v.

CENTURY THEATRES, INC.
150 Pelican Way
San Rafael, CA  94901

             Respondent.

:
:
:
:
:
:
:
:
:
:
:
:
:

No. 51 115 Y 00355 08

## STATEMENT OF CLAIM

1.      Claimant, FMP Stratford LLC ("FMP"), is a Delaware limited liability company. FMP is the owner and operator of the Stratford Square Mall (the "Mall) located at 152 Stratford Square, Bloomingdale, Illinois.

2.      Respondent, Century Theatres, Inc. ("Century"), is a California corporation with a principal place of business located at 150 Pelican Way, San Rafael, California.

3.      On or about December 12, 2005, FMP and Century entered into a Lease Agreement (the "Lease").  A copy of the Lease is attached hereto as Exhibit A.

4.      Pursuant to Section 18.5 of the Lease, FMP and Century agreed to arbitrate certain disputes in accordance with the Commercial Arbitration Rules of the American Arbitration Association.

5.      On February 27, 2008, Century purported to reinstate a Notice of Landlord's Default it had previously sent and withdrawn.  A copy of the letter from counsel for Century

L # 716622 v.1

purporting to reinstate such Notice is attached hereto as Exhibit B.

6.      Century's Notice of Default alleges without any detail that FMP breached the Lease by (a) failing to pay the full amount of Landlord's Reimbursement, (b) failing to undertake and complete Landlord's Work, including the installation and renovation of interior common areas and the renovation of the priority parking area, and (c) failing to undertake and complete the Mail Entry improvements.

7.      FMP expressly denies that it has breached the Lease and has so advised Century both orally and in writing.

8.      FMP hereby requests a prompt hearing respecting Century's contentions and an adjudication by the designated arbitrators confirming that FMP has not breached the Lease as alleged by Century and awarding FMP all of its costs, including its attorneys' fees, incurred in prosecuting this action in accordance with the express terms of the Lease.

9.      FMP requests that the hearing take place in Chicago, Illinois.


Keith R. Dutill, Esquire
Stradley Ronon Stevens & Young, LLP
30 Valley Stream Parkway
Malvern, PA  19355
(610) 640-5809

Attorneys for Claimant
FMP Stratford LLC


Dated: March 7, 2008

-2-

L # 716622 v.1

# EXHIBIT 4



DLA Piper US LLP
203 North LaSalle Street, Suite 1900
Chicago, Illinois  60601-1263
www.dlapiper.com

David Sickle
david.sickle@dlapiper.com
T  312.368.4081
F  312.630.7361

January 17, 2008

*VIA TELECOPY AND OVERNIGHT DELIVERY*

FMP Stratford LLC
c/o Feldman Mall Properties
2201 East Camelback Road
Suite 350
Phoenix, Arizona 85016
Attn:  Lease Administration

Re:    **STRATFORD SQUARE MALL**
       **NOTICE OF LANDLORD DEFAULT**

Ladies and Gentlemen:

DLA Piper US LLP represents Century Theatres, Inc. ("Century") with respect to the Lease Agreement dated as of December 12, 2005 (together with any amendments thereto, the "Lease") by and between FMP Stratford LLC, as Landlord, and Century, as Tenant.  Capitalized terms that are not otherwise defined in this letter shall have the respective meanings that such terms have under the Lease.

On behalf of the Tenant, we hereby notify you pursuant to Section 18.6 of the Lease that the Landlord is in default under the Lease. Without limitation, Landlord has breached the Lease by:

(i)      Failing to pay to Tenant the full amount of Landlord's Reimbursement as and when required under Section 1.1 of the Lease and Section 5.2 of the Work Letter;

(ii)     Failing to undertake and complete Landlord's Work described in Section 1.1(b)(i) of the Work Letter, including (x) the installation and renovation of interior Common Areas, and (y) the renovation of the Priority Parking Area and other features in accordance with Exhibit D-4 to the Work Letter; and

(iii)    Failing to undertake and complete the Mall Entry Improvements in accordance with Section 1.1(b)(iv) of the Work Letter (the work described in paragraph (ii) above and this paragraph (iii) is collectively referred to as the "Upgrades").

As a consequence of these defaults and other defaults by Landlord which may exist under the Lease, the Tenant has incurred and continues to incur significant damages and other injuries. As you are also aware, the Tenant relied on Landlord's agreement to timely perform the Upgrades when it opened for business in the Demised Premises, and the Tenant continues to suffer losses as a result of Landlord's failure to perform the Upgrades. The Tenant reserves the right to pursue all rights and remedies that may be provided for under the Lease or otherwise may be available to Tenant at law or in equity with respect to Landlord's defaults, including (without limitation), the right to withhold Rent pursuant to Section 5.2(c) of the Work Letter and the right to terminate the Lease pursuant to Section 3.1(b) thereof.  Tenant's opening of the Theatre last year and continued operation of its business at the Premises does not constitute a waiver of any defaults by Landlord or any conditions, rights or remedies in favor of Tenant.

We are aware that the parties have engaged in discussions concerning, among other things, the allocation of allowances under the Work Letter, a revised scope of work for the Upgrades and the amount

02/27/2008  15:36    312-236-7516    DLA PIPER    PAGE  05/05



FMP Stratford LLC
January 17, 2008
Page 2

due to Tenant in respect of the Landlord's Reimbursement.  While the parties may have reached a general, tentative agreement concerning some of these matters, the draft amendment that was circulated last month was not consistent with Tenant's understanding of the parties' discussions.  In addition, while Tenant may be willing to consider allowing Landlord to perform a reduced scope of work for the Upgrades as discussed by Jack Markwick and Tom Owens, Tenant will not agree to any reduced scope for the Upgrades unless (i) it is clearly set forth in a fully executed amendment to the Lease, (ii) Landlord concurrently pays to Tenant all amounts owed in respect of Landlord's Reimbursement as outlined in the draft amendment that Landlord circulated and (iii) the amendment clearly provides that Tenant's obligations to pay rent will only commence on satisfactory completion of the Upgrades.  Our client will continue to work with the Landlord in good faith to resolve any outstanding issues but, unless and until expressly agreed by Tenant to the contrary in a fully executed lease amendment, we must insist on the strict performance by Landlord of its obligations under the Lease.

Very truly yours,

DLA Piper US LLP

David Sickle

cc:    FMP Stratford LLC
           Mall Management Office
           152 Stratford Square Mall
           Bloomingdale, Illinois  60108
           Attn:  General Manager
           Facsimile No. 630-351-9769

       Midland Loan Services, Inc.
           10851 Mastin Blvd., Suite 300
           Overland Park, KS  66210
           Attention: Asset Management
           Facsimile No. 913-253-9001

       Eurohypo AG, New York Branch
           1114 Avenue of the Americas
           Twenty-Ninth Floor
           New York, New York 10036
           Attention: Legal Director
           Facsimile No. 212-479-5800

       Eurohypo AG, New York Branch
           1114 Avenue of the Americas
           Twenty-Ninth Floor
           New York, New York 10036
           Attention: Head of Portfolio Operations
           Facsimile No. 212-479-5800

       Tom Owens
       Paul Ledbetter, Esq.
       Michael Kuppersmith, Esq.

CHGO2\40230100.2 1/17/08

# EXHIBIT 5

**American Arbitration Association**
*Dispute Resolution Services Worldwide*

## COMMERCIAL ARBITRATION RULES
## DEMAND FOR ARBITRATION

| | |
|---|---|
| *MEDIATION: If you would like the AAA to contact the other parties and attempt to arrange a mediation, please check this box.* ☐ *There is no additional administrative fee for this service.* | |

| Name of Respondent | Name of Representative (if known) |
|---|---|
| FMP Stratford LLC | Linda Ann Galante |

| Address | Name of Firm (if applicable) |
|---|---|
| c/o Feldman Mall Property / Attn: Lease Administration | Stradley Ranon Stevens & Young LLP |
| 3225 North Central Avenue, Suite 1205 | Representative's Address<br>2600 One Commerce Square |

| City | State | Zip Code | City | State | Zip Code |
|---|---|---|---|---|---|
| Phoenix | AZ | 85012- | Philadelphia | PA | 19103-7098 |

| Phone No. | Fax No.<br>(602) 277-7774 | Phone No.<br>(215) 564-8075 | Fax No.<br>(215) 574-8120 |
|---|---|---|---|

| Email Address: | Email Address:<br>LGalante@stradley.com |
|---|---|

The named claimant, a party to an arbitration agreement dated <u>December 12, 2005</u>, which provides for arbitration under the Commercial Arbitration Rules of the American Arbitration Association, hereby demands arbitration.

THE NATURE OF THE DISPUTE

   1) Respondent/Landlord has failed to pay Claimant/Tenant the Landlord's Reimbursement due to Tenant under parties' Lease.

   2) Respondent has failed to complete site improvements provided for under parties' Lease.

| Dollar Amount of Claim $ 1,441,430.33 | Other Relief Sought: ☒ Attorneys Fees    ☒ Interest<br>☒ Arbitration Costs ☐ Punitive/ Exemplary ☐ Other |
|---|---|

AMOUNT OF FILING FEE ENCLOSED WITH THIS DEMAND (please refer to the fee schedule in the rules for the appropriate fee) $

PLEASE DESCRIBE APPROPRIATE QUALIFICATIONS FOR ARBITRATOR(S) TO BE APPOINTED TO HEAR THIS DISPUTE:
   Experience in interpreting terms of lease covering procedure for build out of tenant's space in retail shopping center

Hearing locale <u>Chicago, Illinois</u>      (check one) ☒ Requested by Claimant   ☐ Locale provision included in the contract

| Estimated time needed for hearings overall:<br><br>     hours or 3     days | Type of Business: Claimant    <u>Operation of movie theaters</u><br><br>Respondent <u>Shopping center owner</u> |
|---|---|

Is this a dispute between a business and a consumer? ☐ Yes ☒ No Does this dispute arise out of an employment relationship? ☐ Yes ☒ No

If this dispute arises out of an employment relationship, what was/is the employee's annual wage range? Note: This question is required by California law. ☐ Less than $100,000 ☐ $100,000 - $250,000 ☐ Over $250,000

You are hereby notified that copies of our arbitration agreement and this demand are being filed with the American Arbitration Association's Case Management Center, located in (check one) ☐ Atlanta, GA ☒ Dallas, TX ☐ East Providence, RI ☐ Fresno, CA ☐ International Centre, NY, with a request that it commence administration of the arbitration. Under the rules, you may file an answering statement within fifteen days after notice from the AAA.

| Signature (may be signed by a representative) | Date:<br>2/27/08 | Name of Representative<br>Gerald B. Lurie |
|---|---|---|

| Name of Claimant | Name of Firm (if applicable) |
|---|---|
| Century Theatres, Inc. | DLA Piper US LLP |

| Address (to be used in connection with this case) | Representative's Address |
|---|---|
| 3900 Dallas Parkway, Suite 500 | 203 North LaSalle Street, Suite 1800 |

| City | State | Zip Code | City | State | Zip Code |
|---|---|---|---|---|---|
| Plano | TX | 75093-7865 | Chicago | IL | 60601- |

| Phone No.<br>(800) 246-3627 | Fax No.<br>(972) 665-1004 | Phone No.<br>(312) 368-4092 | Fax No.<br>(312) 630-7400 |
|---|---|---|---|

| Email Address: | Email Address:<br>gerald.lurie@dlapiper.com |
|---|---|

To begin proceedings, please send two copies of this Demand and the Arbitration Agreement, along with the filing fee as provided for in the Rules, to the AAA. Send the original Demand to the Respondent.

Please visit our website at www.adr.org if you would like to file this case online. AAA Customer Service can be reached at 800-778-7879

# EXHIBIT 6

 **DLA PIPER**

203 North LaSalle Street, Suite 1800
Chicago, Illinois 60601-1293
*main* 312.368.4000 *fax* 312.236.7516

**GERALD B. LURIE**
gerald.lurie@dlapiper.com
*direct* 312.368.4092 *fax* 312.630.7400

February 27, 2008

<u>**Via E-Mail**</u>

Linda Ann Galante
Stradley Ranon Stevens & Young LLP
2600 One Commerce Square
Philadelphia, PA 19103

Re:    **Century Theatres, Inc. / Stratford Square Mall, Bloomingdale, Illinois**

Dear Ms. Galante:

Enclosed is a copy of the Demand for Arbitration which we are serving on FMP Stratford LLP today, together with a copy of our transmittal letter to FMP Stratford LLC. This Demand for Arbitration is being filed in response to the February 15, 2008 letter which you delivered to Century Theatres, Inc., disputing Century's right to withhold rent as a result of the non-payment of "Landlord's Reimbursement" and alleging that Century Theatres, Inc. is in default for failing to pay rent.

Pursuant to the provisions of paragraph 18.5 of the Lease, Century Theatres, Inc.'s filing of this Demand for Arbitration stays its right to set off rent during the pendency of the arbitration. Accordingly, Century Theatres, Inc. will pay Base Rent for the last two days of February 2008, and for the ensuing months, during the pendency of the arbitration.

Very truly yours,

DLA PIPER US LLP

Gerald B. Lurie

GBL/kw
Enclosure

cc:    Paul Ledbetter (w/o encl.)

CHGO1\31159504.1

# EXHIBIT 7



Stradley Ronon Stevens & Young, LLP

2600 One Commerce Square
Philadelphia, PA 19103-7098
Telephone 215.564.8000
Fax 215.564.8120
www.stradley.com

Linda A. Galante
LGalante@stradley.com
215-564-8075

February 15, 2008

<u>**VIA FEDERAL EXPRESS**</u>

Century Theatres, Inc.
150 Pelican Way
San Rafael, California 94901
Attn: Chief Executive Officer

   Re: Office Lease Agreement ("Lease") dated December 12, 2005, by and
     between FMP Stratford LLC ("Landlord"), and Century Theatres, Inc.
     ("Tenant") for Premises at 152 Stratford Square, Bloomingdale, Illinois
     (the "Premises")

Gentlemen:

   As you are aware, this law firm represents FMP Stratford LLC, the Landlord
under the above-referenced Lease, and this notice is being sent on its behalf. Capitalized terms
used but not defined in this notice shall have the meanings ascribed to such terms under the
Lease.

   This letter constitutes formal notice of default under the terms of the above
referenced Lease as a result of Tenant's failure to remit Rent pursuant to Article 4 of the Lease.
Accordingly, demand is hereby made that you immediately remit payment on account of all Rent
currently in arrears in the aggregate amount of Eight Hundred Forty Thousand Nine Hundred
Sixty Two and 10/100 Dollars ($840,962.10). Without limitation, Tenant has breached the Lease
for failure to pay Rent for the months of June 2007 thru February 2008. Although Section 5.2(c)
of the Work Letter allows Tenant to withhold payment of Rent should Landlord fail to pay a
portion of the Landlord's Reimbursement when due, such provision is not determinative in this
situation, given the facts and circumstances.

   Under the terms of the Lease, "Landlord's Reimbursement" is the lesser of
$5,000,000 or the actual costs incurred by Tenant for the design, funding and installation of
Tenant's Work pursuant to the Work Letter. Of the $4,579,980.46 of Tenant's Work to be
reimbursed by Landlord, Landlord has approved $3,138,550.13 and disputes $1,441,430.33 of
that amount. Landlord has in fact paid Tenant $2,846,367.65 of the undisputed portion of

Century Theatre, Inc.
February 15, 2008
Page 2

Landlord's Reimbursement.  The difference between those figures, $292,182.48, has been unpaid by Landlord, based on the additions requested by Tenant, as follows:

(i) overtime premiums in the amount of $461,922, pursuant to a change in final plans under Section 3.7 of the Work Letter, and evidenced by change order number 15, dated February 5, 2007, between Graycor Construction Company, Inc., DLR Group and Landlord, and an email from Lonnie Gillman to Bernie Hunt, dated February 8, 2007, which indicates the use of the Landlord Reimbursement for FF&E to expedite construction of improvements at the Premises;

(ii) Tenant's requested upgrades to non-Lobby areas in the amount of $432,263. This amount is owed by Tenant under the terms of and pursuant to Section 3.7 of the Work Letter, as they were changes made after final plans had been approved; and

(iii) Tenant's requested additions to the Theatre beyond the scope of work set forth in the approved plans, in the amount of $126,038. This amount is owed by Tenant under the terms of and pursuant to Section 3.7 of the Work Letter, as they were changes made after final plans had been approved.

These amounts due Landlord by Tenant for the overtime premiums, upgrades and additions beyond the approved plans total $1,020,223 (the "Overage"). If the $292,182.48 figure is deducted from the Overage, Tenant owes Landlord $728,040.52, in addition to Rent in the amount of $840,962.10.

Please note that your failure to remit the Rent to Landlord within seven (7) business days after your receipt of this notice will constitute an "Event of Default" under the Lease affording Landlord the right to exercise any and all Event of Default remedies contained in the Lease, including, without limitation, termination of your Lease in accordance with the provisions of Article 18 of the Lease.

This is a matter of the utmost seriousness, and I trust that your actions will be guided accordingly.

Sincerely yours,

Linda Ann Galante

LAG/ks

Century Theatre, Inc.
February 15, 2008
Page 3


cc:    Century Theatres, Inc. (Via Federal Express)
           150 Pelican Way
           San Rafael, California 94901
           Attn: General Counsel

           DLA Piper Rudnick Gray Cary US LLP (Via Federal Express)
           203 N. LaSalle Street, Suite 1800
           Chicago, Illinois 60601
           Attn: David B. Sickle, Esquire

        Mr. Tom Wirth (Via Email)
        Mr. Walter J. Logan, Jr. (Via Email)
        Mr. Jack Markwick (Via Email)
        John F. Dougherty, Jr., Esquire (Via Email)
        Midland Loan Services, Inc. (Via Fax No. 913-253-9001)